# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

PATRICIA KUSHINO, 217 Southgate Drive, )
Northbrook, Illinois 60062, )
ON BEHALF OF THE )
PATRICIA L. KUSHINO )
REVOCABLE TRUST; and )
 )
JO ANNE WILLIAMS, 2807 Conroy Place )
Louisville, Kentucky 40218, )
 )
   Plaintiffs, )
 )
 v. ) Case No. <u>4:19-CV-76-JHM</u>
 )
FEDERAL AVIATION )
ADMINISTRATION, )
800 Independence Avenue, S.W. )
Washington, D.C. 20591 ) **COMPLAINT**
 ) **FOR DECLARATORY**
DAN ELWELL, ) **AND INJUNCTIVE RELIEF**
*In His Official Capacity as* )
*Acting Administrator of the* ) * * Electronically Filed * *
*Federal Aviation Administration,* )
800 Independence Avenue, S.W. )
Washington, D.C. 20591 )
 )
PHILLIP J. BRADEN, )
*In His Official Capacity as Manager* )
*Memphis Airport Districts Office,* )
*Federal Aviation Administration,* )
2600 Thousand Oaks Blvd., Ste. 2250 )
Memphis, Tennessee 38118 )
 )
HENDERSON CITY-COUNTY )
AIRPORT BOARD, )
2154 Hwy. 136 W., Suite 1 )
Henderson, Kentucky 42420 )
 )
ALLEN BENNETT, )
*In His Official and Individual Capacity as* )
*Manager of the Henderson City-County Airport,* )
2154 Hwy. 136 W., Suite 1 )
Henderson, Kentucky 42420 )
 )

HENDERSON COUNTY, KENTUCKY            )
20 North Main Street                          )
Henderson, Kentucky 42420                )
                                                       )
CITY OF HENDERSON, KENTUCKY     )
222 First Street                                 )
Henderson, Kentucky 42420                )
                                                       )
RUSSELL SIGHTS,                            )
*In His Official and Individual Capacities*  )
*as City Manager, Henderson, Kentucky*,  )
222 First Street                                 )
Henderson, Kentucky 42420                )
                                                       )
                              Defendants.    )

## PRELIMINARY STATEMENT

1.      Patricia Kushino and Jo Anne Williams, (hereinafter the "Williams") seek declaratory and injunctive relief against the Defendant Federal Aviation Administration ("FAA") concerning violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, and its implementing regulations. The FAA has violated these laws in failing to supplement the Environmental Assessment prepared in accordance with NEPA when there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

2.      The Williams seek declaratory and injunctive relief against Defendant Henderson City-County Airport Board ("Airport Board"), in order to prevent the Airport Board from further acquisition of property and avigation easements, removal of mature tree canopy, and further destruction of property on the Williams property and adjacent property, until the actions of the FAA can be reviewed by this Court under NEPA.

3.      On September 2, 2016, the FAA issued a Finding of No Significant Impact ("FONSI"), **Exhibit 1**. The issuance of the FONSI constitutes final agency action by the FAA.

2

4. The FONSI relates to a proposed expansion of the Henderson City-County Airport approved by Phillip J. Braden. The FONSI states "[the proposed expansion] will not significantly affect the quality of the human environment or otherwise include any condition requiring consultation pursuant to Section 102(2)(C) of NEPA, for the proposed developments at the Henderson City-County Airport ("Henderson Airport") in Henderson, Kentucky."

5. Since the FONSI was issued, significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts have been discovered. Despite efforts by the Williams, those new circumstances and information have yet to be reviewed.

6. The Williams seek an order by this Court to require supplementation of the environmental review under NEPA, and additionally seek injunctive relief against the FAA and the Henderson City-County Airport Board in order to prevent irreparable harm to the Williams' rights as adjacent landowners during the review by this Court of FAA compliance with NEPA, and to preserve the ability of this Court to fashion a remedy in the event that the FAA is found to have acted in violation of NEPA and its implementing regulations.

7. The Williams are also seeking relief from the Airport Board's, Henderson County's ("County"), the City of Henderson's ("City") and County, City, and Airport Board officials' unlawful taking of the Williams' property for a stormwater pipeline that is part of and necessary for the airport expansion. Such unlawful taking was done in bad faith and without private need or use. As such, the property must be returned to the Williams, and the Airport Board, Henderson County, and City must be enjoined taking the same property in the future.

8. The Williams are also seeking relief under 42 U.S.C. § 1983 for the Airport Board's, County's, City's, and County, City, and Airport Board officials' violation of the Fifth

Amendment of the U.S. Constitution for the taking of the Williams' property in bad faith, without public use or purpose, and without just compensation. Defendants County, City, and Airport have also adopted policies and decisions to take the Williams property without just compensation.

9. The Williams assert individual and official capacity claims against the Defendant officials. They seek compensatory and punitive damages for Defendant officials' taking property with no public purpose or use, in bad faith, and without just compensation in violation of the Williams' rights under the Fifth Amendment, and the Williams request preliminary and permanent injunctive relief compelling Defendants to stop the unconstitutional taking of their property. The Williams also assert a claim pursuant to *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978), against Defendants City, County, and Airport Board, for damages due to the unconstitutional policy, practice, and decisions adopted by the officials.

10. The Williams seek a declaration that the challenged policy, practice, or decision of taking the Williams' property with no public purpose or use, in bad faith, and without just compensation violates the Fifth Amendment's takings clause.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 since this matter arises under the National Environmental Policy Act and its implementing regulations and presents a federal question, and also arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

12. An actual, justiciable controversy now exists between Plaintiffs and the Defendants. The requested declaratory and injunctive relief is therefore proper under 28 U.S.C. §§ 2102-2202 (Declaratory Judgment Act).

13.     The violations by the FAA of its obligations under NEPA are reviewable pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The requested injunctive relief is available pursuant to F.R.Civ.P. Rule 65.

14.     Venue is proper in this judicial district and in this Court under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(e)(1)(A) because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of property that is the subject of the action is situated. This is the district in which this action arose.

15.     This Court also has pendent jurisdiction over the claim for injunctive relief against the Henderson Airport Board in order to preserve federal question jurisdiction in the application of federal law such as the National Environmental Policy Act and a cause of action exists against the Henderson Airport Board for prospective injunctive relief in order to protect the ability to fashion an effective remedy for violations of federal law.

## PARTIES AND STANDING

16.     Plaintiffs Patricia Kushino and Jo Anne Williams are landowners in Henderson County, Kentucky, and the subject property is located in Henderson County, Kentucky. Their property will be directly impacted by the airport expansion project, including the removal of trees and destruction of property. The Airport Board has already taken a portion of their property necessary for the Airport Expansion project without authority or permission.

17.     Plaintiffs Patricia Kushino and Jo Anne Williams are sisters, and are owners of an approximately 180-acre farm located at 3490 Highway 136 West, Henderson, Kentucky ("Williams Family Farm").  Patricia Kushino, through the Patricia L. Kushino Revocable Trust, and Jo Anne Williams each own a one-half interest in the Williams Family Farm, subject to the life estate of their mother, Mary Janet Williams.

18.     The Williams Family Farm is located adjacent to property owned by the Henderson City-County Airport. The Henderson Airport Board has made repeated requests to purchase drainage easements, avigation easements, and fee-simple interests in the Williams Family Farm. The Airport Board has already taken a portion of the Williams' property necessary for the Airport Expansion project without authority or compensation.  The Farm would be adversely affected by the runway expansion project, which is the subject of this NEPA challenge.

19.     The Williams have interests that have been and are directly, adversely, and irreparably injured by the actions of the Defendants, and these property and economic interests fall within the ambit of "a substantial interest" so as to afford them standing to challenge the FAA's failure to supplement the EA. The injuries-in-fact that have occurred from the runway expansion project near their property in Henderson, Kentucky, and which will continue to occur absent injunctive relief, will not be redressed except by an order from this Court that: (1) requires the FAA to comply with NEPA and its implementing regulations; and (2) ensures that Defendants, including Henderson City-County Airport Board, will take no further action towards implementing the airport expansion program, including the acquisition of property and the commencement of construction, until this Court has completed judicial review of the need to supplement the EA under NEPA.

20.     The injuries-in-fact that Plaintiffs Kushino and Williams have and continue to suffer as a direct consequence of FAA federal funding of and approval of the Henderson City-County Airport Expansion Project, fall within the ambit of "substantial interests" that have been recognized as sufficient to support standing to challenge a FAA Order pursuant to Article III. *cf: Communities Against Runway Expansion, Inc. v. FAA, et al*, 355 F.3d 678 (D.C. Circuit 2004) (probability of increased noise sufficient to support standing), and *NRDC v. FAA*, 564 F.3d 549

(2d Cir. 2008) (persons who use and enjoy wetlands to be eliminated by proposed airport sufficient to demonstrate requisite substantial interest in challenged order).

21.     Defendant FAA, headquartered in Washington, D.C., is a subordinate federal agency within the U.S. Department of Transportation with the responsibility for administering the nation's airport system and navigable airspace.  The FAA is responsible for complying with NEPA, and other federal laws prior to making a final decision on providing federal financial assistance and/or approvals to the programs and projects of local airport authorities.

22.     Defendant Dan Elwell is the Acting Administrator of the Federal Aviation Administration and is sued in his official capacity.

23.     Defendant Phillip J. Braden is Manager of the FAA Memphis Airports District Office ("ADO") and is sued in his official capacity. The Memphis ADO is part of the FAA Southern Region Airports Division, which oversees airport development, certification, and safety in the southern U.S. Federal responsibility regarding these program areas over Kentucky airports is assigned to the Memphis ADO.

24.     Defendants Elwell and Braden are responsible for the approval, authorization, environmental review, and administration of federally funded and assisted airport projects and programs, and are responsible for ensuring that their official actions comply with NEPA and its implementing regulations.

25.     Defendant Henderson City-County Airport Board ("Airport Board") is a local government entity organized under Kentucky law and six-member board appointed by the both the Mayor of Henderson and Henderson County Judge Executive, because the airport is jointly owned by the City of Henderson and Henderson County. The Airport Board manages and operates the Henderson City-County Airport, subject to regulation by and oversight of the FAA.

The FAA also provides federal financial aid to support operation, maintenance, and expansion of the airports.

26.     Defendant Allen Bennett is the Manager of the Henderson City-County Airport, which is located at 2154 Highway 136 West, Suite 1, Henderson, Kentucky, 42420. Defendant Bennett in his official capacity is located in Henderson County, Kentucky. Defendant Bennett in his individual capacity is located in Henderson County, Kentucky.

27.     Defendant Henderson County, Kentucky is a local government entity organized under Kentucky law, and owns an undivided one-half interest in the land on which the Henderson City-County Airport is located. The County can be responsible for filing condemnation petitions when the Airport Board seeks to condemn property.

28.     Defendant City of Henderson, Kentucky is a local government entity organized under Kentucky law, and owns an undivided one-half interest in the land on which the Henderson City-County Airport is located. The City can be responsible for filing condemnation petitions when the Airport Board seeks to condemn property.

29.     Defendant Russell Sights is the former City Manager of the City at the time the unlawful taking occurred. Defendant Sights in his official capacity is located in Henderson County, Kentucky. Defendant Sights in his individual capacity is located in Henderson County, Kentucky.

**LEGAL BACKGROUND**

**National Environmental Policy Act**

30.     Congress enacted NEPA in 1969 to "promote efforts which will prevent or eliminate damages to the environment." 42 U.S.C. § 4321. NEPA requires an environmental impact statement be prepared for "major federal actions significantly affecting the human environment."

31.     Regulations adopted by the Council on Environmental Quality at 40 C.F.R. Parts 1500-1508 implement NEPA and are binding on all federal agencies.  FAA has not promulgated supplemental regulations for complying with NEPA, but has issued two Orders that direct the agency's compliance with NEPA.  The first is Order 1050.1F (July 16, 2015), and the second Order is FAA Order 5050.4B (April 28, 2016).

32.     "Major federal action," for purposes of determining whether the National Environmental Policy Act requires preparation of environmental documentation, includes:

> Actions with effects that may be major and which are potentially subject to federal control and responsibility ...
>
> (a) Actions include new and continuing activities, including projects and programs entirely or partially financed, assisted, conducted, regulated, or approved by federal agencies...

40 C.F.R. § 1508.18.

33.     An Environmental Assessment ("EA") is one type of NEPA document that can be prepared by a federal agency. An EA is designed to (1) "provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact;" and (2) "[a]id an agency's compliance with the Act when no environmental impact statement is necessary."  40 C.F.R. § 1508.9(a). The document is required to identify the need for the proposal, an evaluation of alternatives to accomplish the need, and the environmental impacts of the proposed action and alternatives. *Id*. at § 1508.9(b).

34.     The FAA is responsible for the scope, content, and accuracy of the EA and for independently evaluating and verifying the information. *Id*. at § 1508.9(a) and (b). Based on information and belief, the FAA and Airport Board prepared the draft EA and EA using FAA funding.

35.     NEPA requires agencies to consider "alternatives to the proposed action." 42 U.S.C. § 4332(C)(iii), (E). The discussion of alternatives is the "heart" of the NEPA process and is intended to provide "a clear basis for choice among options by the decisionmaker and the public." 40 C.F.R. § 1502.14. Agencies must "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." *Id*. at § 1502.14(a). The alternatives evaluated are defined by the underlying "purpose and need" for the project. *Id*. at § 1502.13.

36.     The federal agency must identify direct, indirect, and cumulative environmental impacts of the proposed action, consider alternative actions and sites and their impacts, and identify all irreversible and irretrievable commitments of resources associated with the action. 42 U.S.C. § 4332(2)(C); 40 C.F.R. §§ 1508.7, 1508.8, 1502.14. "Environmental," when referring to impacts or effects in a NEPA evaluation, has a broad meaning, including "ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic cultural, economic, social, or health..." *Id*. at § 1508.8.

37.     Direct effects are those "which are caused by the action and occur at the same time and place." 40 C.F.R. § 1508.8(a). Indirect effects are "caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." *Id*. at § 1508.8(b). A cumulative effect is "the impact on the environment which results from the incremental impact of the action when added to other past, present, or reasonably foreseeable future actions regardless of the agency (Federal or non-Federal) or person undertakes such other actions." *Id*. at § 1508.7.

38.     40 C.F.R. § 1502.9(c) also requires a supplemental assessment or statement when: (i) The agency makes substantial changes in the proposed action that are relevant to environmental

10

concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or impacts. Agencies are required to prepare, circulate, and file a supplemental impact statement or assessment in the same manner as a draft and final statement or assessment. 40 C.F.R. § 1502.9(c)(4).

## Administrative Procedures Act

39.     The Administrative Procedure Act (APA) provides for judicial review of federal agency actions. 5 U.S.C. § 701(a).

40.     The APA authorizes courts to review agency actions and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." *Id.* §§ 706(2)(A), 706(2)(D).

## 42 U.S.C. § 1983

41.     42 U.S.C. § 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

42.     In the recent U.S. Supreme Court case, *Knick v. Township of Scott*, No. 17-647 (U.S. Jun. 21, 2019), the Supreme Court held that property owners may bring a takings claim under §1983 in upon the taking of their property without just compensation by a local government. **Exhibit 2**.

43.     Under 42 U.S.C. § 1983, Plaintiffs are entitled to compensatory damages including pain and suffering, humiliation, and punitive damages; injunctive and declaratory relief; and attorney's fees pursuant to 42 U.S.C. §1988.

### FACTUAL BACKGROUND

44.     The subject property has been in the Williams family since the late 1700s. Bill and Mary Janet Williams transferred ownership of the subject property to their daughters, Patricia Kushino and Jo Anne Williams, in 2003, retaining life estates in the property. *See* Affidavit of Patricia Kushino. **Exhibit 3**.

45.     Bill Williams made multiple accessions of his property rights on or about 2008 and 2010, when he allowed the Airport Board to remove significant stands of trees and use an easement along Pond Creek.  Mr. Williams was never reimbursed for these actions and was never notified of any impending airport expansion that would require use of the Williams Family Farm.

46.     On February 26, 2017, Bill Williams passed away. Mary Janet Williams, his wife, had moved to another home within the city of Henderson, Kentucky. Their grandson, Sean Williams, moved into the home located on the subject property several years ago.  Sean and his brother Justin Williams, with their respective families, currently reside at the Williams Family Farm, in separate homes.

47.      According to the EA, the existing Henderson City-County Airport includes a 5,502-foot-long by 100-foot-wide asphalt runway with a full parallel taxiway on the north side. According to a 2012 Runway Justification Study completed by the Henderson City-County Airport Board, a recommended runway length of 6,500 feet was suggested for business and corporate users. The FAA forecasts projected an increase in based aircraft from 42 in 2014 to 69 by 2034.

48.      In order to accommodate this alleged projected growth of based aircraft and alleged insufficient runway length, the County, City, Airport, and their officials claim the runway must

be extended to the west, a 1,000 foot runway safety area and 800 foot wide object free area must be added, as well as an expanded runway protection zone to the west which would require purchasing the surrounding agricultural fields.

49.     The FAA's proposed action included a total runway extension in 2019 to achieve a total runway length of 6,500 feet. In order to achieve that goal, the Airport would allegedly need to: acquire 56.2 acres in 2016, acquire remaining approximately 61.2 acres of land at a later date, relocate an existing power transmission line, reroute existing Trigg-Turner Road, reroute existing Corydon Geneva Road, create new connection for the proposed rerouting of Trigg-Turner Road and Corydon Geneva Road, extend the runway, extend the parallel taxiway, displace Runway 27 end to remove the two existing Modifications to Standards, and reroute floodwaters to Pond Creek. This proposed action was included in the Airport Layout Plan.

50.     According to the EA, "[n]o official traffic counts were completed as a part of this analysis," but the forecast data generally came from the runway extension justification study completed in 2012.  *See EA* at 8.

51.     According to the EA, two alternatives were considered for achieving a 6,500-foot runway. Alternative 1 planned to extend the existing runway to the west, while Alternative 2 planned to extend the existing runway to the east, as well as a No Action Alternative. Alternative 1 required relocating two roads and an overhead powerline, and contained six sub-alternatives for rerouting Trigg-Turner Road and Corydon Geneva Road. Alternative 2 required relocating State Highway 136W, which would also result in acquisitions of multiple parcels of land which were owned by the Riverport Authority. *See EA* at 16. The No Action Alternative did not "meet the purpose and need for the project" and "limits future growth identified by the aviation demand forecasts." *See EA* at 17. However, the FAA provided no analysis of the environmental impacts

of Alternative 2. The EA also failed to consider a reasonable range of alternatives as required by NEPA. Other primary and secondary alternatives exist, including use of other nearby airports.

52.     In addition, the EA failed to consider substantial flooding and drainage issues in and around the airport property, including on the Williams Family Farm. These issues were discovered after the EA was completed. These stormwater issues could have substantial impacts on the watershed, floodplain, wetlands, and other waters of the U.S. in the area, including on the Williams' property.

53.     As a result of the EA, the FAA issued a Finding of No Significant Impact FONSI, and chose Alternative 1, specifically Alternative 1F, as the preferred alternative. Alternative 1F includes acquiring 117.4 acres in fee simple, rerouting existing roads and transmission lines, and converting 64.8 acres of farmland. *See EA* at 15. This alternative proposes to acquire portions of the Williams Family Farm property in fee simple, portions of the property by avigation easement, and portions by right of way easements. The proposal will also reroute a highway and transmission lines through the Williams property, and reroute floodwaters from the airport property including the expansion area through the Williams property and discharge on the Williams property into Pond Creek.

54.     The issuance of the FONSI constitutes final agency action by the FAA.

55.      The Williams were never given notice of the draft EA or the FONSI. In fact, despite allegedly having to acquire property from only four property owners, the FAA and the Airport Board failed to inform the owners of those properties by mail or otherwise. The only means by which the FAA and Airport Board informed the public of the NEPA process and the draft EA was by advertisement in the local paper.

56.    Because of the failure to receive notice of the draft EA and NEPA process, Kushino and Williams were unable to comment on the draft EA and were also unable to request a public hearing.

57.    In fact, as the FONSI indicates, the FAA received no public comments, and there were no requests for a public hearing. This was reflective of the inadequate notice given to adjacent, impacted property owners.

58.    The County, City, Airport, and their officials have approached the Williams Family to purchase portions of their property in fee simple, purchase an avigation easement, and to purchase an easement in order to mitigate flooding on Airport Board property.[1] However, the Williams Family were never directly approached to discuss mitigation of environmental impacts to their property because of the airport expansion, and were never given an opportunity to comment on the environmental assessment or comment on other reasonable alternatives.

59.    Not until the Williams retained counsel, and counsel filed a Freedom of Information Act Request to the FAA did the Williams learn that a FONSI had been issued. The response to the FOIA request containing the FONSI was received on November 20, 2017.

60.    Shortly after discovery of the FONSI, the Williams met with the County, City, Airport, their officials, and their environmental consultants. It was then that the Williams learned that the County, City, Airport, and their officials did not analyze the flooding issues on the airport property and the need to correct the airport issues in order to expand the airport. That included the need to use Plaintiffs' property for a stormwater pipe to transfer stormwater flows from the airport to Pond Creek on the south side of the Williams farm. The County, City, Airport, and their officials first attempted to negotiate an easement with the Williams through the

---

[1] Note that Airport Board changed course and constructed the stormwater pipeline through Plaintiffs' property along the right of way without authority or permission. *See infra*.

15

Williams farm for the stormwater pipe. Then, the County, City, Airport, and their officials changed course, and decided to build the stormwater pipe along a right of way, where the Williams were still the underlying owner of the right of way. The County, City, Airport, and their officials constructed the stormwater pipeline through the Williams property next to the right of way without permission or authority from the Williams.

61.     The Williams then filed suit, alleging the FAA and Airport Board failed to comply with NEPA and the APA. The Sixth Circuit dismissed the Complaint, holding that notification by newspaper was enough to satisfy the notice requirement even if the Williams never received such notice.

62.     However, on the Williams supplementation claims, the Sixth Circuit also held, "To challenge the FAA's decision not to prepare a supplemental environmental impact statement, Petitioners should file a separate petition." **Exhibit 4**; Order, *Kushino, et al., v. FAA et al.*, No. 18-3084, 3 (6th Cir. June 21, 2018) *citing Cf. Marsh v. Or. Nat. Res. Council*, 490 U.S. 360 (1989). The Williams are doing so today.

63.     The Williams requested by letter sent to the County and the Airport Board that the County and Airport Board supplement the EA with an analysis of the newly discovered drainage issue that was not addressed in the EA. Plaintiffs received no response to this request.

64.     In the meantime, the County, City, Airport, and their officials installed a stormwater pipe pursuant to airport expansion flood control plans through the Williams property along the right of way without permission or authority in violation of the Fifth Amendment. Kentucky law does not allow the installation of a stormwater pipe to drain an airport in the right of way without authority or permission from the underlying property owner, unless that property right is

condemned. The County, City, Airport, and their officials have never sought to condemn the property for the stormwater pipe.

65.     Since the installation of the stormwater pipe, flooding conditions on the Williams property have exacerbated in the area where the stormwater pipe discharges, causing a further taking of their property.

66.     The expansion of the airport will cause the removal of trees and destruction of property on the Williams Farm.

67.     The City, County, Airport Board and FAA have failed to respond to the Williams' request to supplement the EA to analyze the impacts of the flood control infrastructure on environment, manifesting in flooded lands on the Williams property. Instead, the Williams were served with a Summons and Petition for Condemnation on June 3, 2019, for the airport expansion onto their property.

68.     The County, City, Airport, and their officials continue to occupy and possess portions of the Williams farm for purposes of stormwater conveyance to alleviate airport flooding without permission or authority.

69.     The Williams are suffering and will continue to suffer irreparable harm to their property, because of Defendants' infringements upon their fundamental and constitutional property rights for which there is no adequate remedy at law.

### COUNT I

**DEFENDANTS ARE REQUIRED TO SUPPLEMENT THE ENVIRONMENTAL ASSESSMENT BECAUSE OF THEIR FAILURE TO ADDRESS STORMWATER DRAINAGE ISSUES AND IMPACTS ON WETLANDS AND OTHER WATERS OF THE U.S.**

70.     Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

71.     NEPA regulations require a party to produce a supplemental impact statement or assessment when: (1) the agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (2) there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts. 40 C.F.R. § 1502.9.

72.     The EA failed to consider substantial flooding and drainage issues in and around the airport property related to the airport expansion, including on the Williams Family Farm. These issues were discovered after the EA was completed. These stormwater issues already have substantial impacts on the watershed, floodplain, wetlands, and other waters of the U.S. in the area, including on the Williams' property.

73.     The FAA's and Airport Board's failure to supplement the EA is arbitrary and capricious and otherwise inconsistent with law.

### COUNT II

### THE FAA AND AIRPORT BOARD FAILED TO PREPARE AN ENVIRONMENTAL IMPACT STATEMENT

74.     Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

75.     The environmental assessment prepared by FAA and Airport Board did not develop an adequate evidentiary record for the impacts to the environment and on the surrounding properties. This includes the environmental impacts to the Williams Family Farm and other impacted properties such as the effect of the proposed airport expansion on wetlands, flooding, and stormwater drainage to Pond Creek and other waters of the U.S.

76.     These environmental impacts and issues are complex and substantial and significantly affect the quality of the human environment.

77.     The FAA and Airport Board are required to prepare a full Environmental Impact Statement in compliance with NEPA to develop an adequate evidentiary record for its analysis on the impacts of floodwaters in and around the proposed airport expansion. Failure to do so is arbitrary and capricious and otherwise inconsistent with law.

**COUNT III**

**THE FAA AND AIRPORT BOARD VIOLATED NEPA BY FAILING TO RIGOROUSLY EXPLORE AND OBJECTIVELY EVALUATE ALL REASONABLE ALTERNATIVES**

78.     Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

79.     The FAA and Airport Board must "[r]igorously explore and objectively evaluate all reasonable alternatives," [40 C.F.R. 1502.14(a)] and, "devote substantial treatment to each alternative considered in detail including the proposed action so that reviewers may evaluate their comparative merits" [id. at (b)] even if "reasonable alternatives not within the jurisdiction of the lead agency" [id. at (c)]. The alternatives requirement is the "heart" of an environmental impact statement. 40 C.F.R. 1502.14.

80.     The Environmental Assessment prepared for the Henderson Airport Expansion is inadequate and must be supplemented. The Environmental Assessment failed to adequately evaluate the environmental impacts to the Williams Family Farm and other impacted properties including the effect of the proposed airport expansion on wetlands, flooding, and stormwater drainage to Pond Creek, and other waters of the U.S.

81.     The Environmental Assessment prepared for the Henderson Airport Expansion also failed to demonstrate how environmental impacts such as flooding and stormwater drainage would be mitigated.

82.    FAA's and Airport Board's failure to adequately evaluate the environmental impacts

to the Williams Family Farm and other impacted properties and to mitigate those impacts is

arbitrary and capricious and otherwise inconsistent with law.

COUNT IV

**THE FAA AND AIRPORT BOARD VIOLATED NEPA WHEN THEY FAILED TO
PROVIDE A RIGOROUS EVALAUTION OF THE DIRECT, INDIRECT, AND
CUMULATIVE IMPACTS OF THE PROJECT.**

83.    Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full

below.

84.    NEPA requires the FAA to conduct a rigorous evaluation of the direct, indirect, and

cumulative environmental impacts of each alternative and to disclose those impacts to the public.

40 C.F.R. § 1502.14(a). NEPA also requires the FAA to "[d]evote substantial treatment to each

alternative considered in detail including the proposed action so that reviewers may evaluate

their comparative merits." *Id*. at (b).[2]

85.    The EA fails to conduct a rigorous evaluation of the direct, indirect, and cumulative

impacts of any of the evaluated alternatives, especially in light of the failure to analyze the

environmental impacts to the Williams Family Farm and other impacted properties of the

proposed airport expansion on wetlands, stormwater drainage to Pond Creek, flooding, and other

waters of the U.S.

---

[2] *See also* 40 C.F.R. 1502.14 ("Based on the information and analysis presented in the sections
on the Affected Environment (§ 1502.15) and the Environmental Consequences (§ 1502.16), it
should present the environmental impacts of the proposal and the alternatives in comparative
form, ***thus sharply defining the issues and providing a clear basis for choice among options by
the decisionmaker and the public***.") (Emphasis added).

86.    In fact, the EA completely lacks any detail or analysis of environmental impacts for Alternative 2, even without stormwater drainage analysis. This is not legally supportable under NEPA.

87.    FAA's and Airport Board's failure to conduct a rigorous evaluation of the direct, indirect, and cumulative environmental impacts of each alternative and to disclose those impacts to the public, especially in light of the failure to analyze the environmental impacts to the Williams Family Farm and other impacted properties of the proposed airport expansion on wetlands, stormwater drainage to Pond Creek, and other waters of the U.S., is arbitrary and capricious and otherwise inconsistent with law.

### COUNT V

**THE COUNTY, CITY, AND AIRPORT BOARD ACTED IN BAD FAITH BY POSSESSING AND OCCUPYING PLAINTIFFS' PROPERTY IN VIOLATION OF THE KENTUCKY AND UNITED STATES CONSTITUTIONS**

88.    Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

89.    Sections 13 and 242 of the Kentucky Constitution prevent the taking of private property without just compensation.

90.    Section 13 of the Kentucky Constitution states: "nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

91.    Section 242 of the Kentucky Constitution states, "Municipal and other corporations...shall make just compensation for property taken, injured, or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction."

92.  The Fifth Amendment of the U.S. Constitution states, "... nor shall private property be taken for public use, without just compensation."

93.  The County, City, Airport Board, and their officials have possessed and occupied the Williams property with a stormwater pipeline without authority or permission to do so.

94.  The County, City, Airport Board, and their officials continue to possess and occupy the property despite Plaintiffs' protests and opposition.

95.  By continuing to occupy the Williams property despite the Williams' protest, County, City, Airport Board, and their officials are acting in bad faith.

96.  If a party occupies, possesses, or acquires property in bad faith, the right to take should be denied. *Com. v. Cooksey*, 948 S.W.2d 122, 123 (Ky. Ct. App. 1997).

97.  Acting in bad faith when taking property is grounds for an attorneys' fee award to Plaintiffs and such other relief the Court deems appropriate. *Bernard v. Russell County Air Bd.*, 747 S.W.2d 610, 612 (Ky. Ct. App. 1987).

98.  The County, City, Airport Board, and their officials are liable to the Williams for damages in an amount to be determined at trial, plus attorney fees, interest, and cost, and the Court should enjoin the County, City, Airport Board, and their officials to return the occupied property to the Williams in the same condition before occupation and possession by County, City, Airport Board, and their officials.

<u>**COUNT VI**</u>

**DEFENDANTS COUNTY, CITY, AND AIRPORT BOARD HAD NO AUTHORITY TO TAKE THE SUBJECT PROPERTY AS THE PROPERTY IS BEING USED PRIMARILY FOR A PRIVATE USE IN VIOLATION OF THE KENTUCKY AND UNITED STATES CONSTITUTION**

99.  Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

100.   The County, City, Airport Board, and their officials can only condemn property for a public use.

101.   The County, City, Airport Board, and their officials have no authority to condemn the subject property for a stormwater pipeline, as the property will primarily be used for private interests.

102.   Having no authority to condemn private property for a private use, any attempts to occupy or possess the subject property should be denied.

**COUNT VII**

**INVERSE CONDEMNATION; VIOLATION OF THE WILLIAMS' CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION UNDER 42 U.S.C. § 1983**

103.   Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

104.   If the Court determines the County, City, Airport Board, and their officials have the right to take, the County, City, Airport Board, and their officials have done so without just compensation in violation of the Fifth Amendment of the U.S. Constitution under 42 U.S.C. § 1983.

105.   By adopting a policy, practice, or decision to take the Williams property in violation of the Fifth Amendment, the County, City, and Airport Board have violated the Williams constitutional property rights.

106.   Defendant Bennett is an Airport Board official with final policymaking authority over the taking of property. His actions were taken in both his individual and official capacities while acting under color of state law.

107.   Defendant Sights is a City official with final policymaking authority over the taking of property. His actions were taken in both his individual and official capacities while acting under color of state law.

108.   The County, City, Airport Board, and their officials have physically occupied Williams' property without just compensation and under the Williams' opposition and protests.

109.   This constitutes an uncompensated physical taking of the Williams property in violation of Sections 13 and 242 of the Kentucky Constitution, and the takings clause of the Fifth Amendment of the U.S. Constitution.

110.   By adopting a policy to take the Williams property in violation of the Fifth Amendment, Defendants Bennett and Sights, in their individual capacities, acted intentionally, willfully and in disregard of the clearly established rights of the Williams, and with deliberate indifference to the clearly rights of the Williams. Defendants Bennett and Sights acted maliciously, with callous disregard for, or with reckless indifference to the clearly established rights of the Williams.

111.   Defendants County, City, and Airport Board acted under color of state law when Defendants Bennett and Sights, officials with final policymaking authority over the taking of property, exercised that final policymaking authority to adopt a policy that resulted in taking of property in violation of the Fifth Amendment.

112.   The challenged policy constitutes a present and ongoing denial or burden upon the property rights of the Williams, which subjects them to serious, immediate and ongoing harms warranting the issuance of declaratory and injunctive relief.

113.   Pursuant to the recent U.S. Supreme Court case, *Knick v. Township of Scott*, No. 17-647 (U.S. Jun. 21, 2019), the Supreme Court held that a property owner may bring a takings

24

claim under § 1983 upon the taking of his property without just compensation by a local government.

114.   By reason of the foregoing, the County, City, Airport Board, and their officials are liable to the Williams for damages in an amount to be determined at trial, plus interest, attorneys' fees and costs pursuant to 28 U.S.C. § 2412 and 42 U.S.C. §1988.

## COUNT VIII

### REQUEST FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS

115.   Plaintiffs incorporate the allegations of numerical paragraphs as if set forth in full below.

116.   Based on information and belief, the FAA used significant sums of federal funds to support the environmental and other analyses that are required to be developed by the FAA in conjunction with the program approval.

117.   The involvement of the FAA in the funding, review, and approval of the program, makes all aspects of the project a "federal action."

118.   Prospective injunctive relief against the Defendants are essential in order to prevent the Henderson City-County Airport Board from rendering a NEPA violation a "*fait accompli*" and eviscerate the federal remedy. This includes the destruction of trees and other property on the Williams Farm.

119.   Prospective injunctive relief against Defendants is also essential in order to prevent the ongoing unconstitutional taking of the Williams property by the County, City, and Airport Board.

120.    Plaintiffs reserve the right to request injunctive relief if their interests will be irreparably harmed by the actions of the Defendants in relation to the airport expansion project during the pendency of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Determine and declare that Defendants violated the National Environmental Policy Act and its implementing regulations in the respects set forth above;

2. Direct the Defendants to supplement the EA with a full Environmental Impact Statement incorporating the newly discovered flooding issues to achieve compliance with the requirements of NEPA;

3. Enjoin Defendants, from proceeding with the airport expansion project, including land acquisition, land destruction, and tree removal, until the violations of federal and state constitutions and laws set forth herein have been corrected to the satisfaction of this court;

4. Enjoin the Defendants County, City, and Airport Board and their officials from taking the Williams property and to return the subject stormwater pipeline property to the Williams in its pre-occupied condition;

5. Issue a declaratory judgment finding that Defendants' policy is unconstitutional under the Fifth Amendment;

6. Find the Defendants violated Plaintiffs' rights under the United States and Kentucky Constitutions;

7. Award economic and compensatory damages;

8. Award punitive damages in an amount to be proven by the evidence against Defendants Bennett and Sights for violating the Williams' rights under the United States Constitution;

9. Allow Plaintiffs their costs of suit, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412 and 42 U.S.C. §1988;

10. A trial by jury on all issues so triable; and

11. Grant Plaintiffs such further and additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Clay A. Barkley

Randal A. Strobo, KBA No. 92767
Clay A. Barkley, KBA No. 93635
STROBO BARKLEY PLLC
239 South Fifth Street, Suite 917
Louisville, Kentucky 40202
(502) 290-9751
rstrobo@strobobarkley.com
cbarkley@strobobarkley.com
*Counsel for Plaintiffs*

Date: July 5, 2019